## PEOPLE *v.* ALICKI.

1. GAMING—SLOT MACHINES.

    Slot machines, usable only for gambling purposes, are gambling devices *per se.*

2. SAME—PRESENCE OF SLOT MACHINES.

    Presence of slot machines, usable only for gambling purposes, on club premises in charge of defendants, as officers of club, constituted a violation of provision of penal code relative to keeping apparatus used for gaming or gambling (Act No. 328, § 302, Pub. Acts 1931).

3. SAME—MISDEMEANOR—KEEPING OF SLOT MACHINES.

    Misdemeanor of keeping apparatus used solely for gaming or gambling was committed in presence of police officers who were upon club premises for some time and ascertained while there that defendants, the club officers, knew of the presence of slot machines (Act No. 328, § 302, Pub. Acts 1931).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 24 Am. Jur., Gaming and Prize Contests, § 35.
[1, 4] Slot-vending machine as gambling device, 38 A.L.R. 73; 81 A.L.R. 177.
[3] 24 Am. Jur., Gaming and Prize Contests, §§ 35, 50.
[4] 24 Am. Jur., Gaming and Prize Contests, §§ 50, 51, 57.
[5] 24 Am. Jur., Gaming and Prize Contests, § 57.

4. Arrest—Misdemeanor in Presence of Officer—Keeping Slot Machines.

    Police officers who were upon club premises following a permitted entrance and who ascertained while there that club's officers knew of the presence of slot machines thereon, could take the machines, carry them away, use them as evidence of the commission of a misdemeanor and proceed with preparation of a complaint and warrant for the arrest of the club's officers (Act No. 328, § 302, Pub. Acts 1931).

5. Searches and Seizures—Slot Machines Taken after Permitted Entrance.

    Seizure of slot machines which were discovered and seized by police officers following a permitted entrance upon premises where kept, was not an unreasonable search and seizure (Act No. 328, § 302, Pub. Acts 1931).

Appeal from Superior Court for the City of Grand Rapids; Taylor (Thaddeus B.), J. Submitted April 16, 1948. (Docket No. 82, Calendar No. 43,957.) Decided June 29, 1948.

Stanley Alicki and others were charged with keeping slot machines. Information dismissed on motion. The people appeal. Reversed and remanded for further proceedings.

*Eugene F. Black,* Attorney General, *Menso R. Bolt,* Prosecuting Attorney, and *Berton Sevensma,* Assistant Prosecuting Attorney, for the people.

*John J. Smolenski* and *J. Robert Smolenski,* for defendants.

Reid, J. On leave granted, plaintiff, the people of the State of Michigan, appealed from an order of the superior court for the city of Grand Rapids, which order discharged the defendants from prosecution and ordered a return of slot machines seized by the police and in effect dismissed the cause.

Defendants were arrested for a violation of Act No. 328, § 302, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-302, Stat. Ann. § 28.534) (Michigan penal code), which reads in part as follows:

"Any person, or his agent or employee who shall, directly or indirectly, keep or occupy or assist in keeping or occupying any common gambling house or any building or place where gaming is permitted or suffered or who shall suffer or permit on any premises owned, occupied or controlled by him any apparatus used for gaming or gambling or who shall use such apparatus for gaming or gambling in any place within the State of Michigan, shall be guilty of a misdemeanor."

On preliminary examination, the following facts were shown:

On March 12, 1947, three police officers of the city of Grand Rapids, *viz:* Laurin Dunn, Owen Doyle and Charles Smith, went to a store building located at 700 Michigan Street, N. E., in Grand Rapids. At the time in question the building was occupied and leased by the Northeastern American Legion Post No. 459, the lease of said premises having been duly executed on behalf of the said legion post by Stanley Alicki, commander, Edmund S. Paolski, adjutant, and Adam C. Kolenda, finance officer (they being the defendants in this case).

The occasion for the police officers going to the premises described was the fact that they held a warrant for the arrest of one Tony Waters, and they had information that he would be found at that particular place, at the time in question. Upon arrival, Dunn ascertained that the door was locked and knocked at the front door and was admitted to the premises by Stanley Alicki. Officers Doyle and Smith waited outside. Dunn asked for Tony Waters, stating that he (Dunn) had a warrant for Waters'

arrest. This warrant, which was for selling liquor to a minor, was shown by Dunn to Alicki. It was soon ascertained that Tony Waters, who had been in the place earlier the same evening, was not then in the building and Alicki promised to have Waters at police headquarters the following morning. While standing in the room talking to Alicki, Dunn saw pinball machines and noticed that a door in the southwest corner of the room was open. As he looked into the next room through the open door from where he was standing, officer Dunn saw one slot machine. At this point Dunn (apparently without objection) admitted the other two officers through the front door. Dunn continued talking with Alicki and did not at that time enter the room where he saw the slot machine. Dunn later stepped into the back room where he had seen the one slot machine, and then saw four others, five in all, of the following denomination: One 25¢ slot machine; two 10¢ slot machines; two 5¢ slot machines.

Dunn then talked to Alicki concerning the slot machines which had been seen by him. Alicki stated there had been a party on the premises some time before and because of lack of time the machines had not been removed from the building. He further stated that they were the property of one Orlikowski. The officers then proceeded to load all the machines in the police cruiser and they were taken to police headquarters, where they have been ever since. It is conceded that the officers had no search warrant.

Upon the completion of the preliminary examination, the judge of the police court denied defendants' motion to dismiss and defendants were bound over for trial to the superior court for the city of Grand Rapids. An information was filed against each of the defendants on June 5, 1947, charging each of them with violation of the statute.

Motion to dismiss the complaint and quash the warrant and information was filed in the superior court for the city of Grand Rapids on behalf of the defendants. After a hearing before the court it was ordered, on October 29, 1947, that the defendants' motion be granted and it is from this order of the superior court that this appeal is taken.

Defendants do not question but that the slot machines are gambling devices *per se*. Defendants, however, claim that there was an illegal search and seizure of the gambling devices in violation of Constitution 1908, art. 2, § 10, which reads in part as follows:

"The person, house, papers and possessions of every person shall be secure from unreasonable searches and seizures."

Defendants further claim that the seizure was illegal because the machines were merely in storage and not in actual use. Defendants in support of the latter claim rely upon the case of *Grand Trunk Western Railroad Co.* v. *City of Lansing,* 291 Mich. 589, in which we construed Act No. 328, § 303, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–303, Stat. Ann. § 28.535), which reads in part as follows:

"Any person who shall for hire, gain or reward, keep or maintain a gaming room, or a gaming table, or any game of skill or chance, or partly of skill and partly of chance, used for gaming, or who shall knowingly suffer a gaming room, or gaming table, or any such game to be kept, maintained or played on any premises occupied or controlled by him, shall be guilty of a misdemeanor."

In construing this section of the statute we say in the *Grand Trunk Case, supra,* page 593:

"To keep or maintain a gaming device means keeping or maintaining it as such. The prohibition is against use in gambling and not against mere pos-

session as in the instant case. There is no statutory mandate to seize or confiscate gaming devices wherever found. There is a penalty for keeping a gaming table for use as such."

It is to be noted that this construction of the statute was in an action of replevin that had to do with the misdelivery of a shipment, in the original packages, in the course of interstate commerce where the goods had been delivered to one, not the bill-of-lading consignee, upon the assertion that he represented the consignee.

In the case at bar the prosecution is brought under section 302 of the statute (Comp. Laws Supp. 1940, § 17115-302, Stat. Ann. § 28.534) and not section 303 (Comp. Laws Supp. 1940, § 17115-303, Stat. Ann. § 28.535). In construing section 302, we have in mind *People* v. *Lippert,* 304 Mich. 685, in which we said, page 691:

"We believe that the proper construction of the statute [Act No. 328, § 302, Pub. Acts 1931] must be that if the punchboards could be used for nothing else except gambling, that if they were intended to be used solely for gambling purposes and had no other reasonable use except for gambling, the defendant, who knowingly suffered or permitted them on premises owned and occupied by him, would be guilty of a misdemeanor."

We further quote from *People* v. *Lippert, supra,* (syllabus 2):

"Presence of punchboards, usable only for gambling purposes, on premises of manufacturer and seller thereof constituted a violation of provision of penal code relative to keeping apparatus used for gaming or gambling (Act No. 328, § 302, Pub. Acts 1931)."

In the case at bar, officer Dunn was duly admitted by defendant Alicki and while lawfully present, he

casually observed a slot machine which could be used only for gambling. Defendant Alicki, by his statements, showed his knowledge of the presence of the machines and that they had been there for some time. A misdemeanor was thus committed in the presence of the officers, by defendants' permitting the machines to be in the building occupied and controlled by them. Under the circumstances of this case, the officers were justified in taking the machines and carrying them away as evidence of the commission of the misdemeanor and proceeding with the preparation of a complaint and warrant for the arrest of the officers of the club found to have had charge of the building and to have had knowledge of the presence of the machines.

Inasmuch as the slot machines were discovered and seized following a permitted entrance, it cannot be considered there was an unreasonable search and seizure. *People* v. *Woodward,* 220 Mich. 511; *People* v. *Harter,* 244 Mich. 346.

The judgment appealed from is reversed. The proceeding is remanded to the superior court for the city of Grand Rapids for further proceedings.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.