PEOPLE v KLAGER

Docket No. 51088. Submitted May 27, 1981, at Lansing.—Decided
July 23, 1981.

Jeffrey M. Klager was charged in Washtenaw Circuit Court with
breaking and entering a building with intent to commit larceny
and with receiving and concealing stolen property over $100.
The charges arose after the car defendant was driving was
stopped for a traffic violation. The defendant was unable to
produce a registration for the car and was unable to identify
the owner by name. Defendant opened the trunk of the car
after being asked by the police if he had any objections to its
being opened. A CB base radio and cash box containing coins
were found in the trunk. These items matched the descriptions
of items which had been reported as having been stolen. After
verifying that the items found were indeed the items that had
been stolen, the police arrested defendant. Defendant made a
pretrial motion to suppress the introduction into evidence of
the items found in the trunk on the ground that the search was
illegal. The motion was denied and, following a *Walker* hear-
ing, the court refused to suppress evidence of defendant's
admissions concerning the cash box. A jury found defendant to
be guilty of receiving and concealing stolen property over $100
and defendant was sentenced, Edward D. Deake, J. Defendant
appeals. *Held:*

1. The trial court did not commit error requiring reversal by
failing to suppress evidence of the two items found in the
trunk. Defendant consented to the opening of the trunk, and
the opening of the gray metal cash box at the time of its
discovery in the trunk was not improper.

2. There was no error requiring reversal in the trial court's
refusal to suppress defendant's statement as to the contents of
the cash box or the admission of testimony by defendant's

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 68 Am Jur 2d, Searches and Seizures § 46.
[2] 68 Am Jur 2d, Searches and Seizures § 47.
[5] 68 Am Jur 2d, Searches and Seizures § 48.
Validity of consent to search given by one in custody of officers. 9
ALR3d 858.

companion relative to their participation in a plan to steal a battery.

Affirmed.

1. SEARCHES AND SEIZURES — CONSENT — VALIDITY OF CONSENT.

The validity of a person's consent to a search without a warrant is a matter of fact to be determined from the evidence and all reasonable inferences to be drawn from it.

2. SEARCHES AND SEIZURES — CONSENT — COERCION — DURESS.

The presence of coercion or duress would require a finding that a person's consent to a search or seizure without a warrant was not validly given.

3. SEARCHES AND SEIZURES — CONSENT — VALIDITY OF CONSENT.

The totality of the surrounding circumstances must be considered in determining the validity of a person's consent to a search or seizure without a warrant.

4. SEARCHES AND SEIZURES — CONSENT — COERCION.

The prosecution need not demonstrate an intentional relinquishment of a known right in order to show a valid consent to a search or seizure without a warrant in the absence of inherently coercive tactics, either from the nature of police questioning or conduct or the environment and atmosphere in which the events occurred.

5. SEARCHES AND SEIZURES — CONSENT.

The mere fact that a defendant was in custody, without more, does not necessarily render his consent to a search without a warrant involuntary, and the presence of a large number of police officers on the scene does not present a situation which is per se coercive.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Terrance E. Klump,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and BEASLEY, JJ.

PER CURIAM. Defendant was convicted by a jury

of receiving and concealing stolen property over $100, MCL 750.535; MSA 28.803. He was sentenced to 1-1/2 to 5 years imprisonment and appeals as of right.

While on routine patrol, Deputy Kenneth Bailey of the Washtenaw County Sheriff's Department stopped defendant for a traffic violation in the Township of Northfield. Defendant was unable to produce a registration for the automobile and could not identify its owner by name. Deputy Bailey, suspecting that the car may have been stolen, called for assistance. Deputies Thomas Spiess and James Stansik responded to the call and further questioned defendant and a passenger accompanying defendant, Tim Bailey. Still suspicious that the car may have been stolen, the deputies detained defendant and Tim Bailey pending a registration check. Deputy Spiess asked defendant whether he had "any objection" to the deputy opening the trunk. Defendant produced the trunk key and opened the trunk himself. Deputy Spiess recognized two items in the trunk of the car, a Panasonic CB base radio and a gray metal cash box, which matched a description of property reported stolen in that day's police summary sheet. Deputy Spiess asked defendant what was in the box and defendant replied that the box just contained some change. The box was opened and was found to contain numerous coins. Defendant was then taken to the deputies' squad car, where the deputies ran a check on the radio's serial number and determined that it had been stolen. At this point, the deputies arrested defendant and read him his *Miranda*[1] rights for the first time.

After receiving the *Miranda* warnings, defen-

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

dant identified the owner of the car as Terry Baumgartner and stated that he had dropped off Terry Baumgartner and a friend after they had told him that they were going to steal a battery. Defendant further stated that he was planning on picking up Terry Baumgartner and his friend as soon as they were finished. Defendant was not charged with involvement in the plan to steal a battery and there was no evidence that any battery was actually stolen.

Before trial, defendant made a motion to suppress evidence of the items found in the trunk, arguing that the search of the trunk was illegal. The trial court denied the motion, finding that defendant had consented to the search of the trunk. Defendant also moved for, and was granted, a *Walker*[2] hearing to suppress evidence of certain of defendant's statements. At that hearing, the trial court refused to suppress evidence of defendant's admission concerning the contents of the box.

Defendant raises four issues on appeal, one of which merits discussion. Defendant first contends that the trial court committed error requiring reversal in failing to supress evidence of the two items found in the trunk. Defendant cites *Arkansas v Sanders,* 442 US 753; 99 S CT 2586; 61 L Ed 2d 235 (1979), *People v Iverson,* 34 Mich App 519; 191 NW2d 745 (1971), and *People v Marshall,* 25 Mich App 376; 181 NW2d 578 (1970). These cases are distinguishable. Each decision was based upon a finding that the arresting officers lacked either probable cause or exigent circumstances to justify a warrantless search. In the present case, the prosecution sought to justify the search on a the-

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

ory of consent. "Whether a consent is valid is a matter of fact based upon the evidence and all reasonable inferences to be drawn from it." *People v Chism,* 390 Mich 104, 123; 211 NW2d 193 (1973). The presence of coercion or duress would require a finding that consent was not validly given. *People v Kaigler,* 368 Mich 281; 118 NW2d 406 (1962).

Defendant contends that he should have been advised of his rights to refuse the search of the trunk and, absent such a warning, the search of the trunk was illegal. This contention is without merit. *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973). In determining the validity of the consent to search, this Court must consider the "totality of the surrounding circumstances". *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *cert den* 422 US 1044, 1048 (1975). Absent evidence of inherently coercive tactics, either from the nature of police questioning or conduct or the environment and atmosphere in which events occur, the prosecution need not demonstrate "an intentional relinquishment * * * of a known right" in order to show a valid consent. *Id.,* 363. Applying these principles to the present case, the relevant circumstances are as follows: (1) defendant was stopped for a traffic violation; (2) defendant was unable to produce a proper registration and could not fully identify the owner of the car; (3) pending verification of defendant's claim that the car was borrowed rather than stolen, two more deputies arrived, resulting in a total of three deputies at the scene; (4) Deputy Spiess asked defendant whether he "had any objection" to the deputy's opening the trunk; (5) defendant removed the trunk key from the keyring in the ignition, and opened the trunk himself.

Defendant concedes that the initial stop of the

vehicle was valid. The stop of the vehicle, as well as the subsequent detention of defendant and his passenger pending verification that the car was not stolen, were justified and reasonable under all the circumstances. *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973), *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). By asking whether defendant had any "objection" to the opening of the trunk, Deputy Spiess effectively communicated that defendant had the option to "object" if he desired to do so. Instead, defendant actually opened the trunk himself. The mere fact that defendant was detained at the time of the consent does not render the consent invalid, 393 Mich 342, 366, and the presence of a number of deputies on the scene "does not present a situation which is per se coercive". *Id.* We find no distinction between the present case and *People v Lumpkin (On Remand),* 64 Mich App 123; 235 NW2d 166 (1975). Here, as in *Lumpkin, supra,* there is no indication on the record that defendant's consent was coerced. In each case, the arresting officer was entitled to rely on the defendant's unequivocal expression of consent.

The opening of the gray metal cash box at the time of its discovery in the trunk was also not improper. Assuming *arguendo* that the scope of defendant's consent to the search of the trunk did not extend to the search of any containers found there, the search was not improper under *Sanders, supra.* The Court in *Sanders* did not hold invalid all searches of closed containers found in lawfully stopped automobiles. Instead, the Court specifically limited its ruling to "personal luggage" such as suitcases, which the Court found to be entitled to a "reasonable expectation of privacy". The Court noted that certain containers found by police dur-

ing an automobile search "by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance", 442 US 753, 764-767, fn 13. In this case, the gray metal cash box did not "support any reasonable expectation of privacy" where it was stolen property and where it accompanied other property which the officer recognized as having been reported stolen.

As to defendant's remaining claims, we find no reversible error in the trial court's refusal to suppress defendant's statement as to the contents of the cash box. Nor, considering the background of the testimony of the defendant's companion relative to their participation in a plan to steal a battery, would we premise reversal upon the trial court's admission of that testimony.

Defendant's conviction is affirmed.